NOE ROUX v. THE BLODGETT & DAVIS LUMBER COMPANY.

[See 85 Mich. 519.]

*Evidence—Order of proof—Principal and agent—Negligence—Instructions to jury—Fellow-servants.*

1. The error, if any, in admitting testimony of the statements of an agent as binding upon the principal, is cured, if the principal seeks to impeach such testimony by that of the agent, who denies that such statements were made.

2. A charge from which the jury must have understood that, inasmuch as men of equal candor might differ on the subject as to whether the plaintiff was in the exercise of due care, the question being one where different views might reasonably be taken, it was the special province of the jury to determine it as a question of fact, is not open to objection.

3. Where a negligence case is tried upon the theory that the machinery by which plaintiff was injured was dangerous if uncovered, which fact the undisputed evidence tends to prove, the defendant cannot assign as error that the court in his charge assumed the existence of such fact, it being disputed for the first time by such assignment, except as questioned by a general request to direct a verdict for the defendant.

4. A foreman in a mill, whose duty it is to see that certain machinery, which is dangerous to employés working around it if uncovered, is covered, is not a fellow-servant of such employés in that regard, but represents the master, who is liable to an employé who is injured by reason of the non-performance of said duty; citing *Sadowski v. Car Co.*, 84 Mich. 100.

Error to Menominee.     (Stone, J.)     Argued January 4 and 5, 1893.     Decided February 17, 1893.

Negligence case.     Defendant brings error.     Affirmed. The facts are stated in the opinion, and in 85 Mich 519.

*Sawyer & Waite,* for appellant.

*Uhl & Crane,* of counsel for appellant, contended:

1. The evidence of the declarations of the defendant's foreman,

made after the accident, was incompetent; citing *Lane v. Bryant*, 9 Gray, 245; *Luby v. Railroad Co.*, 17 N. Y. 131; *Whitaker v. Railroad Co.*, 51 Id. 295; *Railroad Co. v. Books*, 57 Penn. St. 339; *Railway Co. v. Hunter*, 33 Ind. 335; *Railway Co. v. Fillmore*, 57 Ill. 265; *Railroad Co. v. Gougar*, 55 Id. 503; *Railroad Co. v. Riddle*, 60 Id. 534; *Railroad Co. v. Coleman*, 28 Mich. 440; *Adams v. Railroad Co.*, 74 Mo. 553; *Railroad Co. v. Hawk*, 72 Ala. 112; *Dietrich v. Railway Co.*, 58 Md. 347; *Patterson v. Railway Co.*, 54 Mich. 91; *Railroad Co. v. O'Brien*, 119 U. S. 99; *Durkee v. Railroad Co.*, 69 Cal. 533; *Williamson v. Railroad Co.*, 144 Mass. 148; *Railroad Co. v. Womack*, 84 Ala. 149; *Railway Co. v. Barger*, 52 Ark. 78; *Wormsdorf v. Railway Co.*, 75 Mich. 472.

2. The evidence of such declarations cannot be considered competent upon the theory that the plaintiff merely anticipated the testimony of the foreman, and therefore the question relates simply to the order of proof; citing *Sherman v. Railroad Co.*, 106 N. Y. 542.

*B. J. Brown (H. O. Fairchild*, of counsel), for plaintiff.

LONG, J.     This case was in this Court at the April term, 1891, and is reported in 85 Mich. 519.     On the former trial in the court below the court took the case from the jury on the ground that the plaintiff was guilty of contributory negligence.     The case has again been tried, and the plaintiff recovered judgment in the sum of $6,000. Defendant brings the case to this Court by writ of error. The facts appearing in the present case are substantially as they appeared in the former record, and are so fully stated in the former opinion that a restatement of them is unnecessary.

It is claimed by defendant's counsel that the court was in error in permitting plaintiff, upon the trial, to prove statements made by Mr. McDougal after the accident occurred.     It appears that while a witness for plaintiff was upon the stand, under examination by plaintiff's counsel, he testified that he saw Mr. McDougal standing at the foot of the stairs while they were bringing the plaintiff down, after he was injured.     He was asked to state

what, if anything, he heard Mr. McDougal say to plaint-
iff, and responded that he heard Mr. McDougal say, "It
is too bad, Noe," speaking to the plaintiff, who said: "I
know, Mr. McDougal, but it is your fault. I told you to
fix it last night." And Mr. McDougal said: "I know,
but I had too much to do. I could not fix it." This
conversation took place about five minutes after the acci-
dent occurred by which the plaintiff was injured, and while
the mill hands were removing him from the mill to the
carriage, ready to take him home. Defendant's counsel
cite many cases to the point that this testimony was
incompetent for the reason that the statements were made
after the accident occurred, and were therefore mere
hearsay.

The rule is that declarations of an agent or servant do
not, in general, bind the principal. To be admissible they
must be in the nature of original, and not hearsay, evi-
dence. They must be made, not only during the contin-
uance of the agency, but in regard to a transaction depend-
ing at the very time. There are authorities, however,
holding that when the statements are made so close upon
the time when the act was completed, such statements are
a part of the *res gestæ*.

Whether the statements made by Mr. McDougal in the
present case were competent or not, as evidence against
the defendant, under these rules, and the cases cited upon
either side of the proposition, need not be considered here.
At the time this testimony was given, it was objected to
by defendant's counsel as incompetent. The court admit-
ted it. If the consideration of the question rested here,
it would become important to consider the authorities cited
by counsel; but it appears that afterwards, and during
the trial. the testimony of Mr. McDougal, taken upon the
former trial, was produced and read on the part of defend-

ant, by consent of both parties, to the effect that the plaintiff gave him no notice of the broken covering previous to the accident. Mr. McDougal also testified that he remembered when the plaintiff was taken down-stairs, but that he did not stand at the foot of the stairs when the plaintiff was taken down, and had no conversation with plaintiff in regard to his agreeing to fix the covering over the gear wheels. He testified fully upon that subject, and claimed that he was not there at all, but went on ahead to get the carriage ready to take plaintiff home. He testified further:

" I did not have any conversation with Mr. Roux while he was fast in the gearing. He spoke to me several times. When he saw me coming first, he hallooed out to me to send for the priest; and while they were getting him out I think he repeated that as much as five or six times, and I promised to do so. That is all the conversation I can remember. He said nothing to me about it being · my fault, while he stood there with his leg in the gearing.

"*Q.* Didn't you say anything to him, that you admitted to him that it was your fault, and that you ought to have had it fixed?

"*A.* No, sir."

Mr. McDougal testified further that about a year before the trial he did have a talk with the plaintiff, and told him that he did not know of this board being off, when the plaintiff said to him that he intended to tell him at noon of the day he got hurt that the board was off.

It appears from this that the defendant on the trial introduced independent evidence upon its part, from the only witness who could testify in that respect, that the plaintiff had given him no notice previous to the accident of the broken condition of this covering, and who also expressly denied the declarations imputed to Mr. McDougal, defendant's foreman, by the testimony of plaintiff and another witness. This testimony being introduced by the

defendant for the purpose of impeaching the testimony of plaintiff and his witness, whatever error—if it was error—there might have been in permitting the plaintiff and his witness to testify to this conversation with McDougal after the accident occurred was cured by defendant, in introducing in evidence the deposition of Mr. McDougal himself, and showing by such deposition the denial made by Mr. McDougal of any and all conversation with plaintiff relative to his agreement to fix the covering over the wheels. If McDougal's deposition had been read in evidence by defendant first, it certainly would have been competent for the plaintiff and his witness to testify upon that subject thereafter, or if Mr. McDougal had been placed upon the witness-stand, and upon cross-examination had been asked if he did not make these statements claimed by plaintiff to have been made by him at the foot of the stairs, and had denied them, it would then have been competent for the plaintiff to introduce testimony showing that he did so state. The whole matter, then, becomes a question simply of the order of proof; and we think it is well ruled that the trial court, under the circumstances here, committed no error in permitting testimony to stand which was afterwards made competent by the introduction of other evidence.

It was held in *Rounsavell v. Pease*, 45 Wis. 506, that where, in an action by the principal, defendants were improperly permitted to introduce evidence of declarations by the agent, but afterwards the agent was called as a witness in plaintiff's behalf, and, after testifying to the facts of the transaction in question, denied that he had ever made the statements imputed to him, the error in admitting the impeaching evidence was cured. This principle was again approved in *Stone v. Sleigh Co.*, 70 Wis. 585. See, also, *Mawich v. Elsey*, 47 Mich. 10; *Roberts v. Pepple*, 55 Id. 367.

It is claimed that the court was in error in instructing the jury in that portion of its charge as follows:

. "Did the performance of plaintiff's duties require him to go into the vicinity of this machinery, and was he in the exercise of ordinary care in so going? Was it necessary that he should act promptly and with rapidity, and did the performance of his duty so absorb his attention that he might not always carry in mind the danger lying there? If the plaintiff's claim in this case is the true one, —and the court leaves it to you to say whether it is or not,—then I advise you that it is a case where two reasonable and different views might be taken, and two men of equal candor might differ as to whether the plaintiff was in the exercise of ordinary care .in going into the vicinity of this machinery, as it is claimed, and whether he did conduct himself with reasonable care; and therefore the question as to whether he was guilty of contributory negligence in so doing is submitted to you."

It is contended by defendant's counsel that by this charge the jury, in effect, were told that a reasonable view was that the plaintiff was not guilty of contributory negligence, and that a man of candor might think he was not guilty of contributory negligence; and, not only this, but the jury must have understood from the charge that it was a case where a finding that plaintiff was not guilty of contributory negligence was a reasonable view. The plaintiff's counsel answer this by the proposition that the court meant to be understood by this charge that *because* of the fact that the case, as made by the plaintiff, was one concerning which two men of equal candor might differ, the question was one for the decision of the jury.

When the case was in this Court upon the former hearing, the important question considered was whether the plaintiff, as matter of law, was guilty of contributory negligence; and it was held that such question must be submitted to the jury for their determination. Mr. Justice McGrath, speaking for the Court, then said: "This is one of those cases where two reasonable and different views

might be taken, and two men of equal candor might differ." And for this reason it was held that the court below, upon that trial, was in error in taking the case from the jury, and ruling that, as matter of law, the plaintiff was guilty of contributory negligence. The same rule was laid down in *Brezee v. Powers,* 80 Mich. 172, and cases there cited. On the present trial the court below stated the proposition to the jury in the exact language used by this Court; and it is evident that the jury must have understood from the charge that, inasmuch as men of equal candor might differ on the subject as to whether the plaintiff was in the exercise of due care, and the question was one where different views might reasonably be taken, it was the especial province of the jury to determine it, as a question of fact. We think counsel for defendant are not correct in their claim.

It is said that the court did not fairly submit to the jury the question whether or not the defendant was guilty of negligence. The court, among other things, stated to the jury, in the general charge:

"It is the law that when a servant, having the right to abandon the service because it is dangerous, refrains from so doing in consequence of the assurance that the danger shall be removed, the duty to remove the danger is manifestly imperative; and the master is not in the exercise of ordinary care unless, or until, he makes his assurance good. Were these assurances and promises made as claimed by the plaintiff here? If the plaintiff did not notify the defendant of this defect, and if the defendant did not— as claimed by the plaintiff—make the promise to repair, and by making such promise induce the plaintiff to continue his work there, then the plaintiff cannot recover in this case. If you find that he understood the increased risk of the gears being uncovered, the defendant cannot be held responsible, if he continued his work for any considerable time, knowing the danger, without being induced by his master to believe that a change would be made, and without making any complaint of such dangers or defects, or calling the attention of the master to them.

If the servant, with full knowledge of the facts, and understanding the increased risk and danger occasioned thereby, in the absence of any promise of the master to remedy the same, remains in the master's employ, then the plaintiff voluntarily incurs such increased risk."

It is claimed by counsel that this portion of the charge —and in fact the entire charge—took from the jury the question whether the machinery was out of repair, and that, in effect, the court decided, as matter of law, that it was out of repair, while the question in dispute on the trial was whether or not it was out of repair.

The case, from its commencement to its close, seems to have been defended upon the grounds—

1. That the gear wheels were not uncovered or exposed at all.

2. That the plaintiff had no right to go near the gear wheels, as his duty did not call him there.

3. That Mr. McDougal did not promise to fix the covering to the rollers.

4. That the plaintiff knew as well as McDougal did that if the gears were uncovered they were dangerous.

5. That the plaintiff was careless and negligent in going near them, if he knew they were uncovered.

No claim was made on the trial, so far as shown by this record, that if the gears were uncovered they were not dangerous to one who had occasion to go near them; no request was made to the court to charge that they were not dangerous, if uncovered, but the whole case proceeded upon the lines above indicated. It is apparent from all the facts and circumstances shown that if the gears were uncovered,—rolling inward, as they did,—one would, if getting against them, necessarily be injured. That question did not seem to be in dispute upon the trial, and it seems to be raised for the first time by the brief of defendant's counsel, except under the first request, to charge the jury to find a verdict in favor of the defendant. There was evidence in the case showing the dangerous character

of these gear wheels when uncovered, and which was not disputed. If the defendant desired a more specific charge upon that question than that contained in the general charge, it was its duty to have asked an instruction on that subject.

One other question is raised which we deem necessary to discuss. The court was asked to direct the jury that—

"If the plaintiff's injury was caused solely through the neglect of McDougal to fix or cause the covering of the gearing to be fixed, then plaintiff cannot recover, as that was the negligence of a fellow-servant, under the facts in this case."

This was refused, and we think properly. The rule laid down in *Sadowski v. Car Co.*, 84 Mich. 100, has special reference to the facts in this case. In that case it was said by Mr. Justice CAHILL:

"That doctrine [the non-liability of the master for the negligence of a fellow-servant] was never applied unless the one injured and the one at fault were engaged in the same general employment. Whatever conflict has arisen in cases has been as to what should be considered the same general employment. The rule adopted by the federal courts, and in most of the states, and which seems to us most in consonance with reason and humanity, is that those employed by the master to provide or to keep in repair the place, or to supply the machinery and tools, for labor, are engaged in a different employment from those who are to use the place or appliances when provided, and they are not therefore, as to each other, fellow-servants. In such case the one whose duty it is to provide and look after the safety of the place where the work is to be done represents the master in such a sense that the latter is liable for his negligence."

This rule is supported by *Ford v. Railroad Co.*, 110 Mass. 240, and *Railroad Co. v. Herbert*, 116 U. S. 653, which were cited and approved in the above case. This rule is but the reiteration of the principle laid down in *Van Dusen v. Letellier*, 78 Mich. 492; *Morton v. Railroad,*

*Co.*, 81 Id. 423,—and has since been followed in *Fox v. Iron Co.*, 89 Id. 387; *Ashman v. Railroad Co.*, 90 Id. 567.

Here McDougal was the foreman of the mill, and according to the evidence in the case it was his duty to have fixed this covering over the gears, if it was out of repair, as that duty was delegated to him by the master. If the plaintiff's testimony is true, he agreed to do so, and by reason of such promise the plaintiff continued in the service.

But one other point need be noticed. It is claimed that the court failed to instruct the jury that it was for them to say whether the omission to put a board in front of the gears was such a defect in ordinary repairs that none but a reckless servant, entirely careless of his safety, would have worked near the gears without their being covered. We think this question was fully covered by the general charge, so far as the defendant had a right to the instruction.

Several other questions are raised, which will not be discussed, but which have been carefully examined, and are overruled. A fair trial has been had, and the questions involved fairly submitted.

Judgment must be affirmed, with costs.

HOOKER, C. J., McGRATH and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.