LOGAN v. AGRICULTURAL SOCIETY OF LENAWEE COUNTY.

1. PLEADINGS—PERSONAL INJURIES—NEGLIGENCE.

In an action for personal injuries, caused by a defective plank in a grandstand which had been erected by the defendant for the purpose of allowing its patrons to witness a horse race, a declaration which alleged defendant's duty to use care in its construction, the existence of certain defects, defendant's duty to make proper inspection, and set forth the facts from which a violation of such duties might be inferred, in the absence of a demurrer and under plea of the general issue, is sufficient to state a cause of action; an allegation that defendant would have discovered the defect if it had performed its duty of inspection clearly implying a neglect of duty owing to plaintiff.

2. AGRICULTURAL SOCIETIES—NEGLIGENCE—LIABILITY.

An agricultural society, organized under section 5953 et seq., 2 Comp. Laws, is not a charitable or eleemosynary institution, and is under the same obligation to exercise due care in the

erection and maintenance of places to which it invites its patrons as is a private corporation.

3. DAMAGES—PERSONAL INJURIES—PERMITTING PERSONAL EXAMI-NATION—DISCRETION OF TRIAL COURT.

The matter of permitting defendant's physician to make a physical examination of plaintiff, in an action for personal injuries, claimed to have been caused by defendant's negligence, rests in the sound discretion of the trial court, and a ruling denying such application will not be disturbed except for an abuse thereof.

4. SAME—INSTRUCTIONS.

In such action, it appeared that in reply to such application plaintiff's counsel produced an affidavit of her physician stating that she was confined to her bed as a result of the injury, that she was weak and extremely nervous, and that in his judgment the examination prayed for would be disastrous, and would have a tendency to increase her nervous disorder and prevent her recovery; that a physician, on behalf of the defendant, was present when plaintiff's testimony was taken by deposition; that defendant's other physician examined plaintiff at the time of the injury; and the court instructed the jury if they believed that defendant's physicians were not given a fair and reasonable opportunity to see and examine plaintiff to ascertain the extent of her injuries, they would have a right to infer that such investigation would not be favorable to plaintiff's claim. *Held*, it was not an abuse of judicial discretion to deny the application.

5. EVIDENCE—COMPETENCY.

In such action it was competent to permit plaintiff's physician to testify that in his opinion plaintiff's injury was attributable to the accident complained of.

6. AGRICULTURAL SOCIETIES—USE OF PREMISES—DUTY TO INSPECT —CARE REQUIRED—QUESTION FOR JURY.

The duty of defendant to its patrons was not only to employ competent inspectors to examine the premises to which it in-vited its patrons, but also to see that such inspectors did their duty; and where, opposed to the testimony tending to establish such inspection, were the facts that a plank broke, that the ends were so rotten that they pulled away from the nails, and the rottenness of the plank was apparent from underneath, the question of whether there was a sufficiently careful inspection was properly submitted to the jury.

7. SAME.

It was not error to exclude the testimony of defendant's presi-

dent to the effect that the people managing the society were farmers; since the same degree of care is required of them as of other classes of persons.

8. APPEAL AND ERROR—MISCONDUCT OF COURT AND COUNSEL.
The action of the trial court in permitting plaintiff's counsel to call defendant's counsel as a witness and to afterwards take the stand and contradict such testimony, and in stating on the objection of defendant's counsel to such ruling that the court could not indulge any criticism on the ruling, while improper, did not justify a reversal.

Error to Jackson; Parkinson, J. Submitted February 23, 1909. (Docket No. 32.) Decided May 25, 1909.

Case by Anna E. Logan against the Agricultural Society of Lenawee county for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

*Smith, Baldwin & Alexander*, for appellant.

*Charles A. Golden* and *John O. Zabel*, for appellee.

The defendant is an agricultural society, organized under the laws of this State in 1878. Section 5953 et seq., 2 Comp. Laws. It held an annual fair, for which it charged an admission. Horse racing was one of the prominent features of the fair, and was very popular. In order to enable its patrons to witness the races it erected a grandstand and bleachers. Its charge for a seat upon the bleachers was 10 cents. The bleachers were constructed in the usual manner. The seats consisted of planks an inch and a half thick and a foot wide, rising in tiers, and about a foot apart. Plaintiff, her husband, and child paid for seats, the plaintiff and her child sitting on the fourth or fifth seat from the ground. She sat with her feet upon the seat in front of her. Her husband sat in a seat behind her. While seated, the plank on which she was sitting broke, and she fell to the ground, striking upon her back. She claims, and gave evidence

tending to show, that she was seriously injured. She claims that her fall was due to the negligence of the defendant, and recovered a verdict and judgment for $1,500.

The declaration alleges the duty, on the part of the defendant, to furnish a seat so constructed and of such material as to insure reasonable safety to plaintiff and those occupying such seats. It alleges that defendant was negligent, in that—

"The defendant did then and there furnish and provide to said plaintiff a seat elevated six feet and upwards from the ground, which seat consisted of a pine plank which had become rotten and decayed, which rotten and decayed condition of said plank was plainly apparent from the condition of the under surface of said plank, and would have been known to the defendant if it had made an inspection thereof, as was its duty, but which rotten and decayed condition of said plank was not apparent from the condition of the upper surface of said plank, and was unknown to said plaintiff."

Plaintiff gave evidence tending to show that there was a knot in this plank at the place where it broke; that the plank was rotten on the underside; that it was so rotten that, where it was nailed to the risers, the plank pulled out of the nails, leaving the nails fast in the risers; that after it broke, one end of the plank was upon the ground, and the other end was hanging at the side. According to the defendant's evidence, both ends were hanging to the risers after it broke.

GRANT, J. (after stating the facts). There are 57 assignments of error, which are referred to, and some argued, in the defendant's brief under 22 heads. We will discuss and determine those which we deem of sufficient importance.

1. Does the declaration state a cause of action? Counsel insist that it does not state, with accuracy and certainty, any duty defendant owed to the plaintiff. While the pleader might have alleged the duty, and the neglect of duty, more accurately and specifically, yet, in the ab-

sence of a demurrer, and in the presence of a plea of the general issue, we think the declaration stated a case. It alleges the duty to exercise proper care in construction. It alleges the defects. It alleges its duty to inspect. It sets forth the facts from which the violation of this duty may be properly inferred. An allegation that the defendant would have seen the defect if it had performed its duty of inspection clearly implies that the duty was neglected.

2. The defendant is not a charitable or eleemosynary institution. While its apparent purpose is the advancement of agriculture, and it is not designed to make money for its stockholders, its purpose is to make money for carrying on its business; and, when it invites the public to seats upon platforms which it has constructed to enable its patrons to witness games, sports, and races, it is under the same obligation to exercise due care in the erection and maintenance of such places as though it were a private corporation. The case does not fall within the rule of *Downes* v. *Harper Hospital*, 101 Mich. 555 (25 L. R. A. 602), and *Pepke* v. *Grace Hospital*, 130 Mich. 493, but within *Scott* v. *University Athletic Ass'n*, 152 Mich. 684 (17 L. R. A. [N. S.] 234), and *Dunn* v. *Agricultural Society*, 46 Ohio St. 93 (1 L. R. A. 754).

3. Error is assigned upon the refusal of the court to order an examination of the plaintiff by the defendant's physicians. Plaintiff claimed an injury to her spine and sexual organs. A notice was given to take the deposition of the plaintiff at her home, on the ground that she was unable to attend the trial. After that notice was served, defendant filed a petition asking for an order that two physicians named be permitted to examine the plaintiff. In reply to this petition, the affidavit of her physician was produced to the effect that she was confined to her bed as a result of the injury, that she was weak and extremely nervous, and that in his judgment the physical examination prayed for in the petition would be disastrous, and would have a tendency to greatly increase her nerv- |

ous disorder and prevent her recovery. The court filed an opinion denying the application on the strength of the affidavit of her physician. These examinations rest in the sound discretion of the trial court. *Graves* v. *City of Battle Creek*, 95 Mich. 266 (19 L. R. A. 641); *Strudgeon* v. *Village of Sand Beach*, 107 Mich. 496; 14 Cyc. p. 365. We do not think the court abused his discretion, especially in view of the fact that a physician, on behalf of the defendant, was present when her deposition was taken, and testified upon the trial, and that defendant's other physician examined her at the time of the injury. All the circumstances connected with the refusal were in evidence, and the court, upon this point, instructed the jury as follows:

"If you find that the defendant's doctors were not given a fair and reasonable opportunity, both or one of them, to examine or see plaintiff, and to make a modest and reasonable investigation for the purpose—and in good faith—of making an examination for the purpose of ascertaining her condition of health and the character and extent of her injuries, if any, then you should take this as against the plaintiff, and have the right to infer that such investigation would not be favorable to her claim in this case. * * * Furthermore, you should consider carefully all the testimony in the case upon that subject, and say whether she has refused at all times or not, and whether those refusals have been reasonable or not. And if not, you have a right to consider it as a circumstance against her to that extent; but, if her reasons seem to be good and adequate in your judgment for doing as she has done under the circumstances, then, of course, it would not be considered by you as of any force or effect against her. You may consider all of the evidence upon that subject in determining what the real situation is."

We see no occasion to disturb the ruling of the court.

4. It was not error to permit plaintiff's physician to testify that in his opinion the plaintiff's injury was attributable to the fall.

5. It is insisted that the defendant had performed its duty in regard to inspection. That it employed compe-

tent men to inspect these bleachers before the opening of the fair is established, and the court so instructed the jury. The patrons of the defendant did not assume a careless and negligent inspection by a competent inspector. There is no question here of fellow-servants. The defendant's duty toward the plaintiff, who was invited upon its premises, and had paid a consideration for admission and a seat, was not only to employ a competent inspector, but to see that the competent inspector did his duty. These inspectors testified to what they did; one that he walked under the seats looking at the structure to see if he could detect defects, the other that he walked up and down on the seats between the risers, testing them by jumping up and down upon them. Opposed to this is the fact that the seat broke with a person sitting on it weighing only 143 pounds; that the ends were so rotten that they pulled out of the nails, and that the rottenness, according to the plaintiff's witnesses, was apparent on the underside of the plank. The question of a sufficiently careful inspection was properly submitted to the jury.

6. It was not error to refuse to permit the defendant's president to testify that the people managing the defendant association were farmers. There is not one degree of care required by farmers erecting bleachers and grandstands for their patrons, and another for merchants and mechanics, or any other class of persons. The same degree of care is required of all.

7. John O. Zabel, one of the attorneys for the plaintiff, volunteered as a witness in her behalf, and was asked to relate a conversation he had with Mr. Smith, the attorney trying the case for defendant, in reference to a physical examination of plaintiff by a physician. The conversation referred to occurred before suit was brought. The witness was asked whether Mr. Smith in that conversation said that he was acting in behalf of the defendant. Of course agency cannot be proved by the declaration of the agent. Objection was made, which the court sustained, the court suggesting that plaintiff could have Mr.

Smith sworn to ascertain whether he was representing the company at that time. Plaintiff's attorney then called Mr. Smith as a witness, against his objection and protest. Mr. Smith testified that he called at Mr. Zabel's office in Toledo in response to a letter written to the defendant in regard to the claim of Mrs. Logan for damages, that he was asked to go there by the president of the defendant, and that it was not at that time contemplated that they were going to have a lawsuit, and that he (Smith) went to see what the claim was. Mr. Smith was then also asked to state the conversation about an examination. He testified that he asked Mr. Zabel if he would have any objection to a physician, representing the company, examining Mrs. Logan, and that Zabel replied that he "didn't know whether he would or not." The court then asked Mr. Smith if he desired to cross-examine the witness. Mr. Smith again objected to the proceeding, saying that it was embarassing and very improper practice. The court said it was proper. To this Mr. Smith took an exception, and the court remarked: "I cannot indulge any criticism on the ruling." To this remark defendant excepted. Mr. Zabel then took the stand, and testified that he told Mr. Smith there would be no objection to an examination of the plaintiff by a physician for the defendant, provided that plaintiff's physician was present at the time, and that he told Mr. Smith to make arrangements for such examination and notify Dr. McDonald so that he could be present. This proceeding on the part of the court and counsel for plaintiff is alleged as prejudicial error. In calling Mr. Smith, plaintiff made him her own witness. If it was necessary to show that Mr. Smith was then acting as the attorney for the defendant, it was entirely proper to call Mr. Smith to prove the fact. Counsel went beyond the suggestion of the court, and asked what the conversation was. He then took the stand to impeach Mr. Smith by denying Mr. Smith's statement and giving his own version of it. The objection made by Mr. Smith upon the trial, and also here, is that the proceeding tended to make

him appear ridiculous before the jury, and weaken his standing and argument before them.   We can hardly concur in this view.   The case was being tried in a community where Mr. Smith was well known, and where his reputation was good.   We think that such proceeding would tend to injure the standing of the attorney who caused it, rather than the standing of the attorney forced into the proceeding by the order of the court.   The remark of the court appears to have been uncalled for.   We do not, however, think that the entire proceeding was of sufficient importance to justify a reversal of the case.

Judgment affirmed.

GRANT, MONTGOMERY, OSTRANDER, HOOKER, and MOORE, JJ., concurred.