FRANK ZAPPALA, PLAINTIFF-APPELLANT, v. STANLEY
COMPANY OF AMERICA, DEFENDANT-RESPONDENT.

Submitted February 16, 1940—Decided April 25, 1940.

For the plaintiff-appellant, *David Cohn* and *Milton Goldinger*.

For the defendant-respondent, *Colie & Schenck*.

The opinion of the court was delivered by

DONGES, J.    On March 15th, 1936, plaintiff-appellant
attended a performance of a motion picture at the Garden
Theatre, in Paterson, which theatre was admittedly in the
possession and control of the defendant-respondent.    An
usher escorted him to a seat, using no light although the
house was darkened.    The plaintiff attempted to seat himself
in the seat indicated by the usher, but the seat collapsed,
throwing him to the floor and inflicting injuries for which
this suit was brought.

With this factual situation presented by the plaintiff's case,
the trial judge granted a motion for nonsuit, holding that
the case came within the ruling in *Schnalterer* v. *Bamberger,*
81 *N. J. L.* 558, and that proof was necessary either of actual
knowledge of a defective seat or of the existence of the defec-
tive condition for such length of time as to charge the defend-
ant with implied knowledge of it.

We conclude that the learned trial judge fell into error
in so holding.    There can be no doubt that the duty imposed

upon the operator of a theatre is to use ordinary care to make the premises reasonably safe for the use to which they are to be put. *Andre* v. *Mertens*, 88 *N. J. L.* 626; *Schellack* v. *Biers*, 109 *Id.* 61; *Lancaster* v. *Highlands, &c., Corp.*, 117 *Id.* 476. The supplying of seats is the custom in theatres and it was the duty of the defendant to use reasonable care to see that the seats were safe for use.

In 1 *Thomp. Negl.*, ¶ 996, it was said:

"The duty assumed by the owners of places to which the public resort in large numbers is manifestly analogous to that which the law imposes on carriers of passengers. Doubtless the true theory is that such persons assume the obligation of exercising reasonable care, and that what will be a reasonable care will be a degree of care proportioned to the danger incurred and the number of persons who will be subjected to that danger. A good expression of the rule of liability, applicable to such cases, is * * * to the effect that the proprietor of such structure is not a warrantor or insurer that it is absolutely safe, but that he impliedly warrants that it is safe for the purpose intended, save only as to those defects which are unseen, unknown, and undiscoverable. Such being the nature of the obligation, it is obvious that the proprietor of such a building is under a continuing duty of inspection, to the end of seeing that it is reasonably safe for the protection of those whom he invited to come into it; and that, if he neglects his duty in this respect, so that it becomes unsafe, the question of his knowledge or ignorance of the defects which render it unsafe is immaterial."

In a number of cases in our courts it has been held that an occurrence which is not usual and in the ordinary course of things, gives evidence of negligence which puts the defendant to his proof. *Sheridan* v. *Foley*, 58 *N. J. L.* 230; *Tompkins* v. *Burlington Island Amusement Co.*, 102 *Id.* 411; *Law* v. *Morris*, 102 *Id.* 650; *Zboyan* v. *City of Newark*, 104 *Id.* 258; *Feingold* v. *S. S. Kresge Co.*, 116 *Id.* 146; *Galbraith* v. *Smith*, 120 *Id.* 515; *Gordon* v. *Weinreb*, 13 *N. J. Mis. R.* 835.

The precise factual situation presented herein seems not to have had consideration in our appellate courts, but has been passed upon in other jurisdictions.

In *Durning et al.* v. *Hyman,* 286 *Pa.* 376; 133 *Atl. Rep.*
568; 53 *A. L. R.* 851, it was held that evidence that plaintiff
was injured when she pulled down a seat in a moving picture
theatre and sat upon it and the left side gave way, causing
her to be thrown to the floor and injured, put upon the pro-
prietor the duty to show reasonable diligence had been used
to provide safe accommodations, and that a proper inspection
was made to assure their suitable condition; and that the
proprietor, though not an insurer of safety, "impliedly con-
tracts that, except for unknown defects, not discoverable by
reasonable means, the (appliance which proved to be defec-
tive) is safe," citing *Scott* v. *Athletic Association,* 152 *Mich.*
684; 116 *N. W. Rep.* 624; 17 *L. R. A.* (*N. S.*) 234; *Logan*
v. *Agricultural Society,* 156 *Mich.* 537; 121 *N. W. Rep.* 485;
*Redmond* v. *National Horse Show Association,* 78 *Misc. Rep.*
383; 138 *N. Y. S.* 364; *Barrett* v. *Lake Ontario Beach Imp.
Co.,* 174 *N. Y.* 310; 66 *N. E. Rep.* 968; 61 *L. R. A.* 829.

"The owner of a place of entertainment is charged with
an affirmative positive obligation to know that the premises
are safe for the public use. He may not be exonerated merely
because he had no precise knowledge of the defective condition
of the place to which he has invited the public. When they
accept his invitation and pay the prescribed admission fee,
they have a right to assume he has furnished a safe place for
them to witness the performance." *Lusk* v. *Peck,* 116 *N. Y.
Supp.* 1051.

"The proprietor or lessee of a place of amusement warrants
the premises to be reasonably safe for the purposes for which
they were designed. If, therefore, an accident occurs from
causes which might reasonably have been anticipated, the
proprietor or lessee must show that he has not been guilty of
negligence in failing to guard against such an accident."
*Redmond* v. *National Horse Show Association, supra.*

In *Reinzi* v. *Tilyou,* 252 *N. Y.* 97; 169 *N. E. Rep.* 101,
the New York Court of Appeals held that a presumption of
negligence arose from mere proof of the breaking of iron
stirrups on the side of steeplechase horses, and that the ques-
tion was for the jury, notwithstanding testimony of defend-
ant's witnesses that the horses were regularly inspected on
the day of the accident.

The last mentioned case was followed by the New York Supreme Court, Appellate Division, Second Department, in *Sasso et al.* v. *Randforce Amusement Corp.*, 275 *N. Y. Supp.* 891, and it was held the doctrine of *res ipsa loquitur* applied in a suit for injuries due to the collapse of a seat in a theatre, and that it was incumbent on the proprietor to explain the collapse of the seat and absolve itself from the implication of negligence arising from the happening of the accident. To the same effect are *Crowley* v. *Rugg,* 292 *Ill. App.* 210; 10 *N. E. Rep.* (*2d*) 678; *Brennan* v. *Ocean View Amusement Co.* (*Mass.*), 194 *N. E. Rep.* 911; *Billroy's Comedians* v. *Sweeney* (*Ky.*), 37 *S. W. Rep.* (*2d*) 43.

We conclude, therefore, that evidence of the collapse of the seat which plaintiff sought to occupy, as shown in this case, was sufficient to put the defendant to its proofs to establish that reasonable care was exercised to comply with the duty owed to the plaintiff, and that it was error to take the case from the jury.

The judgment under review is reversed, and a *venire de novo* awarded; costs to abide the event.

*For affirmance*—None.

*For reversal*—The Chief Justice, Parker, Case, Bodine, Donges, Heher, Perskie, Porter, Hetfield, Dear, Wells, WolfsKeil, Rafferty, Hague, JJ.   14.